**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. <u>26-mj-8442-RMM</u>**

**IN RE SEALED COMPLAINT**

_____/

**<u>CRIMINAL COVER SHEET</u>**



FILED BY_____MEE____D.C.

Jun 16, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

5. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

JASON REDING QUIÑONES
UNITED STATES ATTORNEY

By: _Violette Bishai_____

VIOLETTE BISHAI
Assistant United States Attorney
Florida Bar No. 1044298
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
Tel: (561) 820-8711
Fax: (561) 820-8777
Violette.Bishai@usdoj.gov

AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

|  |  |  |
|---|---|---|
| United States of America | ) |  |
| v. | ) |  |
| GAVLYN RENARD HOOKS and | ) | Case No.   26-mj-8442-RMM |
| RALEIGH MARKALE LEWIS, | ) |  |
|  | ) |  |
|  | ) |  |
| *Defendant(s)* |  |  |

FILED BY _____ *MEE* _____ D.C.

**Jun 16, 2026**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   4/27/26 through on or about 6/10/26   in the county of   Palm Beach   in the

_____ Southern _____ District of _____ Florida _____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a); 841(b)(1)(B)(iii); and 846 | Conspiracy to distribute 28 grams or more of a mixture or substance which contains cocaine base |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

Special Agent Benjamin Garnett, ATF
*Printed name and title*

Sworn and Attested to me by Applicant by Telephone (FaceTime) pursuant to Fed. R. Crim. P. 4(d) and 4.1

Date: 6/16/26

*Judge's signature*

City and state:            West Palm Beach, FL

Hon. Ryon M. McCabe, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION FOR A CRIMINAL COMPLAINT**

I, Benjamin Garnett, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the West Palm Beach Field Office. I have been employed as a Special Agent with ATF since March 2020. As part of my duties as a Special Agent, I am responsible for conducting investigations of violations of federal laws, including but not limited to, those pertaining to firearms, narcotics, and firearms trafficking. I have conducted and participated in numerous investigations involving, but not limited to, the illegal possession and "straw purchasing" of firearms, carjacking, Hobbs Act Robbery, narcotics trafficking, and possession of a firearm in furtherance of narcotics trafficking.

2. Your affiant makes this Affidavit in order to establish probable cause to believe that, in the Southern District of Florida, Gavlyn HOOKS ("HOOKS") and Raleigh LEWIS ("LEWIS") did conspire to distribute a controlled substance, to wit: twenty-eight (28) grams or more of cocaine base (crack), a Schedule II controlled substance, in violation of Title 21, United States Code, §841(b)(1)(B) and Title 21, United States Code, §846.

3. The statements contained in this Affidavit are based on my personal knowledge, as well as information provided by other individuals, including other law enforcement officials and my review of records and other evidence obtained during the course of this investigation. I have included only those facts that I believe are necessary to establish probable cause in support of an arrest warrant.

**<u>PROBABLE CAUSE</u>**

**Controlled Purchase of approximately 21.3 Grams of Cocaine Base (Crack) – April 27, 2026**

4.   On or about April 27, 2026, at the direction of law enforcement, an ATF Undercover Agent ("UC"), exchanged communications with HOOKS to arrange the purchase of approximately one (1) ounce of crack cocaine from HOOKS to take place on April 27, 2026. HOOKS agreed to conduct the purchase at the Wawa Gas Station, located at 7289 Garden Rd, Riviera Beach, Florida, in the Southern District of Florida. HOOKS stated to the UC that he would be arriving in a "little purple car." All phone conversations were audio preserved and all text communications were preserved.

5.   On or about April 27, 2026, in the late afternoon hours, the UC, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of the Wawa Gas Station, located at 7289 Garden Rd, Riviera Beach, Florida. Upon arrival, the UC parked the UC vehicle in the parking lot of the gas station and awaited HOOKS' arrival. Shortly after, the UC observed HOOKS arrive at the gas station in the passenger seat of a purple Hyundai Elantra bearing Florida license plate KB636D. HOOKS then exited the vehicle holding a baggie containing a white substance in his hand and approached the driver window of the UC vehicle. HOOKS handed the UC the same baggie HOOKS had in his hand which contained the suspected crack cocaine and explained that his supplier did a good job cooking the narcotics. The UC weighed the suspected narcotics, and it appeared to weigh approximately 21.3 grams, short of the agreed upon weight of crack cocaine. HOOKS asked the UC for the narcotics back, then took the narcotics to the purple Hyundai Elantra and returned shortly after with a new price.  HOOKS explained to the UC that the new price for the short amount would be $850.00 instead of $950.00 and that he would make

it right in the future. The UC understood that to mean future buys won't be short.  The UC agreed to the new price and provided HOOKS with $860.00, and then $100.00 in ATF Investigative Funds. The UC explained that $110.00 was a brokerage fee for HOOKS, and to pay $850.00 to his supplier.

6.   HOOKS and the UC talked briefly regarding future narcotics purchases. As HOOKS and the UC were talking, the driver of the Hyundai Elantra exited the vehicle and started walking towards them. When HOOKS saw this, he identified the driver as his source of supply and told the UC to leave. The UC exited the parking lot in the UC vehicle and observed HOOKS and his source of supply both entering the purple Hyundai Elantra. The UC subsequently identified the driver of the vehicle (and source of supply) as Raleigh LEWIS. A query of the Florida Driver and Vehicle Information Database indicated that the purple Hyundai Elantra bearing Florida license plate KB636D is registered to LEWIS.

7.   Following the transaction, the suspected crack cocaine from the transaction was field tested and yielded a positive result for the presence of cocaine base. The field test positive cocaine and packaging had an approximate weight of 21.3 grams. The field test positive crack cocaine was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis revealed the crack cocaine had a net weight of $20.17 \text{ g} \pm 0.01 \text{ g}$ and was $71\% \pm 5\%$ pure cocaine base. The controlled purchase with HOOKS and LEWIS was captured on both video and audio recording.

**Controlled Purchase of approximately 29.3 Grams of Cocaine Base (Crack) – April 30, 2026**

8.   On or about April 30, 2026, at the direction of law enforcement, an ATF Undercover Agent ("UC"), exchanged communications with HOOKS to arrange the purchase of approximately one

(1) ounce of crack cocaine from HOOKS to take place on April 30, 2026. HOOKS agreed to conduct the purchase at the Wawa Gas Station, located at 7289 Garden Rd, Riviera Beach, Florida, in the Southern District of Florida. All phone conversations were audio preserved and all text communications were preserved.

9.   On or about April 30, 2026, in the late afternoon hours, the UC, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of the Wawa Gas Station, located at 7289 Garden Rd, Riviera Beach, Florida. Upon arrival, the UC parked the UC vehicle in the parking lot of the gas station and awaited HOOKS' arrival. HOOKS told the UC that he was on his way and the narcotics weighed 28 grams. Shortly after, the UC observed the purple Hyundai Elantra bearing Florida license plate KB636D pull into the parking lot being driven by LEWIS and park next to the UC vehicle. HOOKS then exited the rear driver's side seat of the Hyundai Elantra and walked toward the UC vehicle and entered the front passenger seat of the UC vehicle. Once inside the UC vehicle, HOOKS handed the UC a baggie wrapped in a napkin. The UC examined the suspected crack cocaine and asked HOOKS if the driver of the Hyundai was the "plug," (referring to a source of supply), and HOOKS stated, "not really." The UC asked if HOOKS' source of supply could sell more than an ounce at a time and HOOKS stated he believed he could. The UC provided HOOKS with $960.00 in ATF Investigative Funds for the narcotics. The UC asked HOOKS if the UC could speak to his supplier and HOOKS informed him that he could not. The UC then provided HOOKS with $100.00 in ATF Investigative Funds as a brokerage fee for arranging the transaction. The UC and HOOKS engaged in conversation regarding future narcotics purchases. HOOKS then exited the UC vehicle. The UC exited the parking lot in the UC vehicle and observed HOOKS return to the passenger side of the purple Hyundai Elantra.

10. Following the transaction, the suspected crack cocaine from the transaction was field tested and yielded a positive result for the presence of cocaine base. The field test positive cocaine and packaging had an approximate weight of 29.3 grams. The field test positive crack cocaine was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis are still pending. The controlled purchase with HOOKS and LEWIS was captured on both video and audio recording.

**Controlled Purchase of approximately 26.5 Grams of Cocaine Base (Crack) – May 12, 2026**

11. On or about May 12, 2026, at the direction of law enforcement, an ATF Undercover Agent ("UC"), exchanged communications with HOOKS to arrange the purchase of approximately one (1) ounce of crack cocaine from HOOKS to take place on May 12, 2026. HOOKS agreed to conduct the purchase at the Wawa Gas Station, located at 7289 Garden Rd, Riviera Beach, Florida, in the Southern District of Florida. All phone conversations were audio preserved and all text communications were preserved.

12. On or about May 12, 2026, in the late afternoon hours, the UC, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of the Wawa Gas Station, located at 7289 Garden Rd, Riviera Beach, Florida. Upon arrival, the UC parked the UC vehicle in the parking lot of the gas station and awaited HOOKS' arrival. Shortly after, the UC observed the purple Hyundai Elantra bearing Florida license plate KB636D pull into the parking lot. HOOKS then exited the front passenger seat of the Hyundai Elantra, walked toward the UC vehicle and entered the front passenger seat of the UC vehicle. Once inside the UC vehicle, HOOKS removed a clear plastic baggie containing suspected crack cocaine. HOOKS told the UC to weigh the suspected crack cocaine. The UC examined the suspected crack cocaine and placed it on a scale which read 26.5 grams. HOOKS told the UC that his supplier (while looking at the Hyundai

Elantra), said the circle was 20 grams, and he added more to the baggie. The UC provided HOOKS with $960.00 in ATF Investigative Funds for the narcotics. HOOKS said that they could possibly do another transaction later in the week. The UC then provided HOOKS with $100.00 in ATF Investigative Funds as a brokerage fee for arranging the transaction. The UC and HOOKS engaged in conversation regarding future narcotics purchases. HOOKS then exited the UC vehicle. The UC exited the parking lot in the UC vehicle and observed HOOKS return to the purple Hyundai Elantra.

13. Following the transaction, the suspected crack cocaine from the transaction was field tested and yielded a positive result for the presence of cocaine base. The field test positive cocaine and packaging had an approximate weight of 26.5 grams. The field test positive crack cocaine was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis are still pending. The controlled purchase with HOOKS was captured on both video and audio recording.

**Controlled Purchase of approximately 57.2 Grams of Cocaine Base (Crack) – May 20, 2026**

14. On or about May 20, 2026, at the direction of law enforcement, an ATF Undercover Agent ("UC"), exchanged communications with HOOKS to arrange the purchase of approximately two (2) ounces of crack cocaine from HOOKS to take place on May 20, 2026. HOOKS agreed to conduct the purchase at the Wawa Gas Station, located at 7289 Garden Rd, Riviera Beach, Florida, in the Southern District of Florida. All phone conversations were audio preserved and all text communications were preserved.

15. On or about May 20, 2026, in the late afternoon hours, the UC, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of the Wawa Gas Station, located at 7289 Garden Rd, Riviera Beach, Florida. Upon arrival, the UC parked the UC vehicle

in the parking lot of the gas station and awaited HOOKS' arrival. While waiting for HOOKS' arrival, HOOKS and the UC exchanged phone calls where HOOKS advised the UC that his source just cooked the cocaine into crack and was waiting on it to dry. Shortly after, the UC observed the purple Hyundai Elantra bearing Florida license plate KB636D pull into the parking lot. HOOKS then exited the front passenger seat of the Hyundai Elantra and walked toward the UC vehicle holding something concealed in a shopping bag and entered the front passenger seat of the UC vehicle. Once inside the UC vehicle, the UC asked HOOKS if the bag contained "both" referring to the two (2) ounces of crack cocaine he had ordered. HOOKS stated, "hell yeah, it's both, it better be." The UC opened the shopping bag and revealed a clear baggie containing suspected crack cocaine. HOOKS informed the UC that the price for the two (2) ounces was $1,750.00. The UC provided HOOKS with $1,800.00 in ATF Investigative Funds for the narcotics. The UC then provided HOOKS with $200.00 in ATF Investigative Funds as a brokerage fee for arranging the transaction. HOOKS then exited the UC vehicle and the UC exited the parking lot in the UC vehicle.

16. Following the transaction, the suspected crack cocaine from the transaction was field tested and yielded a positive result for the presence of cocaine base. The field test positive cocaine and packaging had an approximate weight of 57.2 grams. The field test positive crack cocaine was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis are still pending. The controlled purchase with HOOKS was captured on both video and audio recording.

**Controlled Purchase of approximately 56.5 Grams of Cocaine Base (Crack) – June 10, 2026**

17. On or about June 10, 2026, at the direction of law enforcement, an ATF Undercover Agent ("UC"), exchanged communications with HOOKS to arrange the purchase of approximately two

(2) ounces of crack cocaine from HOOKS to take place on June 10, 2026. HOOKS agreed to conduct the purchase at the Wawa Gas Station, located at 7289 Garden Rd, Riviera Beach, Florida, in the Southern District of Florida. All phone conversations were audio preserved and all text communications were preserved.

18. On or about June 10, 2026, in the late afternoon hours, the UC, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of the Wawa Gas Station, located at 7289 Garden Rd, Riviera Beach, Florida. Upon arrival, the UC parked the UC vehicle in the parking lot of the gas station and awaited HOOKS' arrival. While waiting for HOOKS' arrival, the UC entered the gas station and purchased three beers (HOOKS previously stated to the UC he wanted to have a drink with the UC). HOOKS then called the UC and told the UC that he was on the way.

19. Shortly after, the UC observed the purple Hyundai Elantra bearing Florida license plate KB636D pull into the parking lot. HOOKS then exited the front passenger seat of the Hyundai Elantra. The UC also observed the driver of the vehicle, which appeared to be LEWIS.

20. HOOKS then walked toward the UC vehicle and entered the front passenger seat of the UC vehicle holding a clear baggie containing suspected crack cocaine. Once inside the UC vehicle, the UC handed HOOKS a beer. HOOKS then handed the UC the baggie of suspected crack cocaine. HOOKS and the UC began negotiating price of the narcotics. HOOKS stated prices were going up and one of his main sources in the area was arrested recently. HOOKS stated that he and his supplier were arguing about the prices. HOOKS stated that his supplier almost turned around while driving to meet with the UC, because he and HOOKS were arguing about the price. The UC gestured toward the purple Hyundai Elantra and asked, "this dude?" in reference to LEWIS. HOOKS answered in the affirmative. The UC provided HOOKS with $2,000.00 in ATF

Investigative Funds for the narcotics. The UC then provided HOOKS with $150.00 in ATF Investigative Funds as a brokerage fee for arranging the transaction. HOOKS asked the UC if he wanted to weigh the narcotics. The UC stated that he did not have a scale, HOOKS stated that his supplier said the weight was good. HOOKS told the UC that he did not want to introduce the UC to his source, due to the fact that HOOKS would feel bad if anything bad happened. HOOKS stated that the individual from whom his supplier obtained narcotics from, was arrested and that he ran the narcotics distribution for city. The UC gave HOOKS another beer to give to his supplier. The two agreed to conduct business in the future. HOOKS then received a call from his supplier telling him that they needed to leave. HOOKS exited the UC vehicle, and the UC exited the parking lot in the UC vehicle.

21. Following the transaction, the suspected crack cocaine from the transaction was field tested and yielded a positive result for the presence of cocaine base. The field test positive cocaine and packaging had an approximate weight of 56.5 grams. The field test positive crack cocaine was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis are still pending. The controlled purchase with HOOKS was captured on both video and audio recording.

<<<<<<<<<<<<<<<THIS SPACE LEFT INTENTIONALLY BLANK>>>>>>>>>>>>>>>>>

## CONCLUSION

22. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that Gavlyn HOOKS ("HOOKS") and Raleigh LEWIS ("LEWIS") did conspire to distribute a controlled substance, to wit: twenty-eight (28) grams or more of cocaine base (crack), a Schedule II controlled substance, in violation of Title 21, United States Code, § 841(b)(1)(B) and Title 21, United States Code, § 846.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Respectfully submitted,

Benjamin Garnett, Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF)

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by FaceTime, on this 16 day of June 2026, at West Palm Beach, Florida

HONORABLE RYON M. MCCABE
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: GAVLYN RENARD HOOKS

**Case No**:

Count #: 1  Conspiracy to distribute 28 grams or more of a mixture or substance which

contains a cocaine base | 21 U.S.C. § 841(a); 841(b)(1)(B)(iii); and 846
* **Max. Term of Imprisonment:** 40 years
* **Mandatory Min. Term of Imprisonment:** 5 years
* **Max. Supervised Release:** 4 years to life
* **Max. Fine:** $5,000,000
* **Special Assessment:** $100

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: RALEIGH MARKALE LEWIS

**Case No**:

Count #: 1  Conspiracy to distribute 28 grams or more of a mixture or substance which

contains cocaine base |  21 U.S.C. § 841(a); 841(b)(1)(B)(iii); and 846
* **Max. Term of Imprisonment:** 40 years
* **Mandatory Min. Term of Imprisonment:** 5 years
* **Max. Supervised Release:** 4 years to life
* **Max. Fine:** $5,000,000
* **Special Assessment:** $100

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**